AO 106 (Rev. 04/10) Application for a Search Warrant

Approved by Jason Harley 2/5/25

# UNITED STATES DISTRICT COURT

for the

Western District of Oklahoma

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

Information Associated With a Cellular Device assigned call number (405) 212-6836, with IMEI number 310410362872337 in custody or control of AT&T

Case No. M-25-88 -CMS

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the Southern District of Florida, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. § 846 | Drug Conspiracy |
| 21 U.S.C. § 841(a)(1) | Distribution/Possession with Intent to Distribute Controlled Substances |

The application is based on these facts:

See Affidavit, attached hereto

☑ Continued on the attached sheet.

☑ Delayed notice of 90 days (give exact ending date if more than 30 days: 05/05/2025 ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Brook J. Wilson, Special Agent, DEA

*Printed name and title*

Sworn to before me and signed in my presence.

Date: February 5, 2025

*Judge's signature*

City and state: Oklahoma City, Oklahoma

Christopher M. Stephens, U.S. Magistrate Judge

*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED A CELLULAR DEVICE ASSIGNED CALL NUMBER (405) 212-6836, WITH INTERNATIONAL MOBILE SUBSCRIBER IDENTITY / ELECTRONIC SERIAL NUMBER 310410362872337, IN CUSTODY OR CONTROL OF AT&T | Case No. MJ-25-88-CMS<br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT**

I, Brook J. Wilson, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this Affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number (405) 212-6836, with International Mobile Subscriber Identity/ Electronic Serial Number 310410362872337 (hereinafter, the "**TARGET PHONE**"), that is stored at premises controlled by AT&T, a wireless telephone service provider headquartered at 11760 US Highway 1, Suite 300, North Palm Beach, Florida 33408.[1] The information to be searched is described in the following paragraphs and in

[1] The **TARGET PHONE** is provided and serviced through Boost Mobile and that company utilizes AT&T cell towers and data. AT&T would therefore control the data sought by investigators. On December 4, 2024, investigators received records from AT&T based on an administrative subpoena submitted for the **TARGET PHONE**. AT&T provided toll records for this account but directed investigators to Boost Mobile to determine additional subscriber information. On January 17, 2025, investigators received the subscriber information from Boost Mobile. The subscriber was listed as Coynetta Grimes at 601 N. Stonewall Ave., Oklahoma City, Oklahoma 73117. Public records show that Ms. Grimes' prior name was Coynetta Archer. Ms. Grimes/Archer is believed to be a relative of the primary target of this investigation – Dandre Archer (ARCHER). The IMEI

Attachment A. This Affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(c)(1)(A) to require AT&T to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. I am a Special Agent with the Drug Enforcement Administration ("DEA") currently assigned to the Oklahoma City, Oklahoma District Office. As such, I am an investigative and law enforcement officer of the United States authorized to conduct investigations of, and to make arrests and seizures for, offenses enumerated in the Controlled Substances Act, Title 21, United States Code.

3. I have been a Special Agent since October of 2014, having previously worked as a United States Border Patrol Agent from 2006 until 2014. After successfully completing the DEA training academy at Quantico, Virginia, I was assigned to the Sierra Vista Resident Office in Sierra Vista, Arizona. In October of 2019, I was transferred and now currently work in the Oklahoma City District Office in Oklahoma City, Oklahoma where I am currently assigned to the Tactical Diversion Squad.

4. During my employment in law enforcement, I have received training and conducted investigations related to illicit drugs and the distribution of illicit drugs, in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), 846, and others. I have participated in many aspects of drug investigations to include the following: undercover operations, surveillance, Title

---

listed on the Boost Mobile subscriber data is the same number registered to the **TARGET PHONE**.

III investigations, search warrants, arrests, reviewing taped conversations and drug records, along with debriefing defendants, informants, and witnesses who had personal knowledge regarding major narcotics trafficking organizations.

5. The statements contained in this Affidavit are based in part on information provided by DEA and other law enforcement officers, either directly or indirectly through their reports or affidavits, and investigations conducted by law enforcement officers.

6. The facts in this Affidavit come from my observations, training and experience, and information obtained from other agents and witnesses. This Affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not include each fact known concerning this investigation.

7. Based on my training and experience and the facts as set forth in this Affidavit, there is probable cause to believe that violations of 21 U.S.C. § 841(a)(1) (Distribution of Fentanyl) and 21 U.S.C. § 846 (Drug Conspiracy) have been or are being committed by Dandre ARCHER, and others yet unknown, which caused the death of Alisha McCoy. There is also probable cause to search the location described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

**JURISDICTION**

8. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

**PROBABLE CAUSE**

9. On July 28, 2024, at approximately 2:12 p.m., officers with the Del City Police Department ("DCPD") were dispatched to 1305 Brookdale Drive., Del City, Oklahoma 73115 in reference to a suspected deceased subject. Upon arrival, officers located Alisha McCoy deceased in the back of the residence in the sunroom along with indicia of fentanyl use, including tin foil, and a home-made pipe made from a writing pen, that Ms. McCoy still had in her right hand. Officers spoke with two family members who were inside the residence. The two family members were Ms. McCoy's grandmother, Connie McCoy, and Ms. McCoy's nephew, Tristan McCoy. Tristan told officers that he had last seen his aunt at approximately 12:00 p.m. on the back porch. Connie told officers that Ms. McCoy spent most of her time in the sunroom and sometimes slept there.

10. On July 29, 2024, investigators with the DEA Oklahoma City District Office, Tactical Diversion Squad were contacted about Ms. McCoy's death due to a suspected fentanyl overdose. DEA agents contacted the family members and retrieved Ms. McCoy's cellphone. Additionally, investigators learned that Ms. McCoy was with her friend Angela Sharp on the day prior to Ms. McCoy's death. Additionally, the family also discovered an empty prescription bottle for Methadone at the residence and that bottle was prescribed to Ms. Sharp.

11. On August 20, 2024, Special Agent (SA) Brook Wilson, SA Robin Melodick and Task Force Officer (TFO) Jamie O'Leary met with Ms. Sharp at her residence at 409 S. Morgan Drive, Moore, Oklahoma. Ms. Sharp stated that she has known Alisha McCoy since she was in school, but that she reconnected with McCoy approximately 5-6 years ago. Ms. Sharp stated that she recently started speaking with McCoy on July 16, 2024, and the two normally communicate using Facebook Messenger. Ms. McCoy also used the TextNow number (405) 676-7095 to send

Ms. Sharp texts because Ms. McCoy did not have cellular service and she had to rely upon WiFi texting and calling. Ms. Sharp said that she knew Ms. McCoy had a fentanyl addiction, and she had been trying to get Ms. McCoy on Methadone because Ms. Sharp takes Methadone instead of opioids.

12. According to Ms. Sharp, on July 27, 2024, around 6 p.m., the two went to a nearby 7-11 store located at 3200 Tinker Diagonal in Oklahoma City. Ms. Sharp thought that Ms. McCoy might have taken her bottle of Methadone during this trip although she did not see her do it. Additionally, Ms. Sharp told investigators about a disagreement between Ms. McCoy and a friend, Tory Rogers, about some Fentanyl pills. Ms. Sharp showed the investigators screenshots between Ms. McCoy and Ms. Rogers about picking up Fentanyl and Ms. Sharp claimed that Ms. McCoy would ask her almost daily to take her to pick up Fentanyl.

13. Based on this information, investigators also interviewed Ms. Rogers. Ms. Rogers explained that she purchased Fentanyl from ARCHER and that she was doing so during the timeframe surrounding Ms. McCoy's death. In fact, Ms. Rogers remembered purchasing Fentanyl from ARCHER either the night before, or possibly two nights before, Ms. McCoy's death. Ms. Rogers explained that she would contact ARCHER on the **TARGET PHONE**, or a TextNow number, to coordinate Fentanyl transactions. Ms. Rogers recalled buying Fentanyl from ARCHER on multiple occasions prior to Ms. McCoy's death, but she did not provide a specific timeframe. According to her, she would use cash or CashApp to pay ARCHER for the Fentanyl and ARCHER's CashApp account was listed under "$stophackin89".

14. Investigators reviewed records received from CashApp for account $stophackin89. These records indicated that the account belonged to Dandre ARCHER who was born in 1989. These records also indicated that the latest phone number added to the account was 405-212-6836,

the phone number associated to the **TARGET PHONE**. Additionally, investigators discovered payments made by Ms. Rogers to ARCHER that corroborated her statements to investigators. Based on my training and experience and knowledge of the historical prices for Fentanyl in Oklahoma City (powder and pills), these CashApp payments to ARCHER were consistent with user quantity transactions. User quantities would be purchases of single dose or small amounts of Fentanyl which is usually consumed quickly.

15. On November 21, 2024, pursuant to a search warrant issued in this district (M-24-779), investigators received the data from Ms. McCoy's TextNow account. While reviewing the data, investigators learned that McCoy first contacted ARCHER from this TextNow account on July 25, 2024. Investigators discovered the following text thread from July 27, 2024 through July 28, 2024 between Ms. McCoy's TextNow number and the **TARGET PHONE:**

> **TARGET PHONE**: Hey brother let me know ASAP if you're still trying to get anything I'm right here by you.
>
> **McCoy**: How long you gonna be
>
> **TARGET PHONE**: I'm coming down Bryant from 48th st
>
> **McCoy**: Ok
>
> **TARGET PHONE**: About to turn on your street from off of 15
>
> **McCoy**: Ok

Approximately 11 minutes after this message string, McCoy sent out her last message from this TextNow account. There were no other messages and the next afternoon she was found deceased with obvious signs of lividity.

16. Based on the aforementioned facts, I believe that the **TARGET PHONE**, in the possession of ARCHER, was utilized for the distribution of Fentanyl and that ARCHER would have been in possession of the **TARGET PHONE** during the time period of the distribution.

**AT&T BACKGROUND INFORMATION**

17. In my training and experience, I have learned that AT&T is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

18. Based on my training and experience, I know that AT&T can collect cell-site data about the **TARGET PHONE**. I also know that wireless providers such as AT&T typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

19. Based on my training and experience, I know that AT&T also collects per-call measurement data, which AT&T also refers to as the "real-time tool" ("RTT"). RTT data estimates

the approximate distance of the cellular device from a cellular tower based on the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

20. Based on my training and experience, I know that wireless providers such as AT&T typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as AT&T typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the **TARGET PHONE's** user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

21. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

22. I further request that the Court direct AT&T to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on AT&T, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

23. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 90 days after the collection authorized by the warrant has been completed, unless the Court issues a subsequent order to further delay notification. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. This is an ongoing investigation that is anticipated to continue for additional months, and may ultimately target multiple coconspirators. Providing immediate notice to the users of the account described in Attachment A would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

24. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

Respectfully submitted,

BROOK WILSON
Special Agent
Drug Enforcement Administration (DEA)

Subscribed and sworn to before me on February 5, 2025.

CHRISTOPHER M. STEPHENS
UNITED STATES MAGISTRATE JUDGE

# ATTACHMENT A

## Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number (405) 212-6836 with International Mobile Subscriber Identity/Electronic Serial Number 310410362872337, that are stored at premises controlled by AT&T ("the Provider"), headquartered at 11760 US Highway 1, Suite 300, North Palm Beach, Florida 33408.

**ATTACHMENT B**

**Particular Things to be Seized**

**I. Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period of July 25, 2024 through July 31, 2024:

a. The following information about the customers or subscribers of the Account:

i. Names (including subscriber names, usernames, and screen names);

ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

iii. Local and long-distance telephone connection records;

iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

v. Length of service (including start date) and types of service utilized;

vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

ii. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and as well as per-call measurement data (also known as the "real-time tool" or "RTT" data).

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence or instrumentalities of violations of 21 U.S.C. §§ 841(a)(1), 846 that have been or are being committed by Dandre ARCHER, and others yet unknown, causing the death of Alisha McCoy.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.